UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CRAIG LUNDSTED,

        Plaintiff,                                Case No. 14-cv-13981

v.                                                 Honorable Thomas L. Ludington

JRV HOLDINGS, LLC, et al.,

        Defendants.

_____/

**ORDER DENYING MOTION TO VACATE, DETERMINING SETOFF RIGHTS, GRANTING IN PART MOTION FOR ATTORNEYS' FEES, AND DIRECTING COMPENSATION**

Plaintiff Craig Lundsted filed this case against Defendants JRV Holdings, LLC and Roosen, Varchetti & Oliver, PLLC on October 15, 2014. He alleged that Defendants violated the Fair Debt Collection Practices Act ("FDCPA") and the Truth in Lending Act ("TILA"). Defendants filed a motion to dismiss Lundsted's TILA claims on March 16, 2015. Lundsted responded by filing an amended complaint that removed his TILA claims, leaving only his claims under the FDCPA. On April 24, 2015, within three weeks of filing his amended complaint, Lundsted accepted an offer of judgment from Defendants for the $1,000.00 statutory damages amount provided in the FDCPA.

In an effort to bring the case to a final resolution, the Court solicited closing documents from the parties. Those documents were due on August 28, 2015. A consent judgment, titled "partial consent judgment" was submitted that day by Lundsted. Without any reference to the inclusion of "partial" in the documents title, but otherwise purporting to close the case, the

Consent Judgment was entered on August 31, 2015 without inclusion of the term "partial" and the case was closed.

**I.**

The August 31, 2015 Consent Judgment provided that Plaintiff recover $1,000 from Defendants jointly and severally and further provided that Plaintiff had twenty-one days to submit a motion for attorneys' fees and a bill of costs. *See* Consent J., ECF No. 26. The day after the Consent Judgment was filed Defendants filed a motion to vacate the judgment. They alleged that the Consent Judgment omitted the following language: "This offer is made without regard to and does not impact JRV's rights to set-off the judgment it holds against Plaintiff." Defs.' Mot. Vacate Cons. J. 2, ECF No. 27. This language was originally included in Defendants' offer of judgment and it was intended to preserve Defendants' right to offset a judgment Defendant JRV Holdings obtained against Plaintiff in January of 2014 for $8,603.31. *See* Defs.' Mot. Vac. J, ECF No. 27.

An in person status conference was held on November 30, 2015, at which Defendants explained that their desire to include the language concerning the offset in the Consent Judgment arose as a result of Plaintiff's right to attorney's fees. At the conference, neither party disputed that Plaintiff's money judgment would be offset against Defendant JRV Holdings' prior judgment. The parties could not reach agreement as to whether the non-prejudice language included in the offer of judgment but excluded from the Consent Judgment would have any effect on whether Defendants could offset any of Plaintiff's attorney's fees (as opposed to levying on the proceeds of the attorneys' fees once in Plaintiff's possession). Nevertheless, the parties agreed that the question of offset was unresolved.

Briefing was directed on two issues: Plaintiff's right to attorneys' fees and Defendants' right to setoff. The parties timely briefed both issues. Lundsted claims that he is entitled to approximately $16,630.50 in attorneys' fees and costs. Defendants dispute that figure. Lundsted also claimed in his briefing on setoff, that Defendants cannot offset JRV's underlying judgment against his attorneys' fees and costs award or his statutory judgment of $1,000.00 (a change in his position from the November 30, 2015 status conference). Defendants argue that they can set off JRV's underlying judgment against both amounts.

## II.

The first issue that needs attention is Defendants' unopposed motion to vacate the consent judgment entered on August 31, 2015. As explained in a prior order of this Court, there is no conceivable rationale for vacating the consent judgment on the basis of the language dispute between the parties. The addition of the non-prejudice language[1] would have no effect on the ability of Defendants, or at least JRV Holdings (the only Defendant with a judgment against Lundsted), to offset their judgment against the consent judgment. The desire to include the non-prejudice language likely arises from the fact that Defendants interposed setoff as an affirmative defense to Lundsted's claims. Defendants perhaps fear, understandably, that leaving any mention of setoff out of the consent judgment forecloses their ability to do so. It does not.

"The right to setoff is a widely recognized common law right which allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *In re Gordon Sel-Way, Inc.*, 270 F.3d 280, 290 (6th Cir. 2001) (quoting *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995)). Thus, it would be illogical that the very thing that creates the mutual indebtedness between Plaintiff and

---

[1] "This offer is made without regard to and does not impact JRV's rights to set-off the judgment it holds against Plaintiff." Defs.' Mot. Vacate Cons. J. 2, ECF No. 27.

Defendants—the consent judgment—also extinguishes Defendants' right to setoff those two debts against each other. Plaintiff does not contend that the consent judgment does so without the non-prejudice language and Defendants have no reason to fear that it does. The non-prejudice language is unnecessary to the consent judgment and its addition would add nothing material. The motion to vacate the consent judgment will be denied.

### III.

The next, and perhaps most important issue to be considered is the right of Defendants' (again, just JRV Holdings) to set off against the present judgment a prior state court judgment against Lundsted. Defendant JRV argues that it can set off the state court judgment against both the judgment in this case and Lundsted's reasonable attorneys' fees (to be discussed below). Lundsted argues that JRV cannot set off its state court judgment against either.

Both parties have thoroughly briefed this issue. Neither party has, however, been able to furnish authority in full support of its position. The relevant question is whether judgment debtors in an action under the Fair Debt Collection Practices Act can set off that judgment against a state court judgment held against the FDCPA judgment creditor. More directly, if JRV holds a state court judgment against Lundsted, as it does, can it set off that judgment against Lundsted's FDCPA judgment and his statutory entitlement to reasonable attorneys' fees?

The limited caselaw that exists addressing this question suggests an answer between the parties' positions. The state court judgment held by JRV can be set off against the FDCPA judgment. It may not be set off against Lundsted's reasonable attorneys' fees. Both of these issues were discussed in *Brown v. Mandarich Law Grp., LLP*, No. 13-CV-04703, 2014 WL 2860631 (N.D. Cal. June 23, 2014). The reasoning of the *Brown* court is persuasive and will be adopted here. A short discussion of the principles behind the conclusions reached in *Brown*

follows, but the *Brown* court's full explanation of the reasons for why set off does or does not apply will not be repeated in its entirety.

**A.**

The procedure used in executing a judgment "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies. Fed. R. Civ. P. 69(a)(1). No federal statute governs the execution of the two judgments at issue here. As explained above, the principle that countervailing judgments may be set off against one another is rooted in common law. *See In re Gordon Sel-Way, Inc.*, 270 F.3d 280, 290 (6th Cir. 2001).

Lundsted argues that this generally applicable common law rule conflicts with the broad purpose of the FDCPA and should be disregarded in this case.[2] He does not provide authority wherein a federal court agreed with his contention. He argues that this Court has previously disallowed set off against FDCPA judgments in *Isa v. Law Office of Timothy Baxter & Associates*, No. 13-CV-11284, 2013 WL 5692850 (E.D. Mich. Oct. 21, 2013). But *Isa* is inapposite. *Isa* concerned an FDCPA judgment debtor satisfying its judgment by paying the FDCPA plaintiff's underlying creditor. That is, there was no setoff at issue in *Isa*. The issue in *Isa* was whether an FDCPA judgment debtor could satisfy an FDCPA judgment by making a transfer payment to the plaintiff's creditor. This Court held that it could not.

As *Isa* observes, allowing such transfer payments would defeat the purpose of the FDCPA. That same logic does not apply where the FDCPA judgment debtor is also a judgment creditor from an underlying state court action, as is the case here. The court in *Brown* concluded rightly that "[p]ermitting an offset of statutory damages here does not take the sting out of the FDCPA damages against Defendant[s]. Defendant [JRV] collects $[1],000.00 less of the

---

[2] It should be noted that during a status conference with the Court, Lundsted represented that he did believe the FDCPA judgment was subject to setoff. He changed that position later during his briefing.

- 5 -

judgment legally owed by Plaintiff, representing a substantial penalty that will deter Defendant from repeating the same actions in the future." *Brown*, 2014 WL 2860631, at *3.

Lundsted goes on to cite a case from the Northern District of California that stated "setoff appears contrary to the established policies of FDCPA." *Reed v. Glob. Acceptance Credit Co.*, No. C-08-01826, 2008 WL 3330165, at *7 (N.D. Cal. Aug. 12, 2008). But that quote, relied upon by Lundsted, is unhelpful out of context. The case itself, and other cases from that district similarly holding, are inapposite as well because they address the ability of a creditor to bring a counterclaim for the underlying debt in an FDCPA action. Cases such as *Reed* have held that a counterclaim for the underlying debt must be dismissed when brought against an FDCPA claim since the counterclaim is not compulsory and, for policy reasons, should not be permitted. Whatever the merits of those cases, they do not address the present situation, where the FDCPA judgment debtor has a prior state court judgment against the plaintiff for the underlying debt.

There are no policy reasons for disregarding the common law rule of setoff. Defendant JRV is entitled to set off its liability against the state court judgment it holds against Lundsted on the underlying debt.

**B.**

For different, but equally sensible reasons, Lundsted's award of reasonable attorneys' fees is not subject to offset against the FDCPA judgment. The *Brown* court reviewed four factors in deciding that attorneys' fees are not subject to setoff: public policy, priority in time of the competing claims, separateness of the two actions seeking to be offset, and the nature of the attorney-client contract. *Brown*, 2014 WL 2860631, at *3–5. The *Brown* court concluded that the

factors weighed against setoff in a case with an identical fact pattern to the present case. *Id*. at *5.[3]

First, public policy does not favor set off of attorneys' fees. Unlike set off of the statutory penalty, allowing set off of attorneys' fees would chill future FDCPA actions and discourage attorneys from taking FDCPA cases. *See Brown*, 2014 WL 2860631, at *3–4. Further, as the *Brown* court recognized, "[o]ffset is . . . patently unfair where it would effectively force attorneys to satisfy the debts of their clients." *Id*. at *3 (internal quotation marks omitted). It is not hard to envision a case where the underlying state court judgment exceeds the FDCPA judgment and its attendant attorneys' fees. In such a circumstance, the setoff would swallow the FDCPA award and leave the FDCPA plaintiff's attorney without any compensation for reaching a successful result. No attorney would bring an FDCPA claim when faced with such a prospect.

---

[3] Defendants argue that *Brown* is inapplicable because it applies California state law. But the *Brown* court explains that it looked to California law because "neither the Ninth Circuit nor the California Supreme Court provide a definitive answer as to whether attorney's fee awards have priority over offset in an FDCPA claim." *Brown*, 2014 WL 2860631, at *3. Since setoff is a creature of common law, it was appropriate for the *Brown* court to look to California law on setoff in reaching its conclusions. Nevertheless, setoff is recognized under Michigan law. *See Walker v. Farmers Ins. Exch.*, 572 N.W.2d 17, 20 (Mich. Ct. App. 1997). Defendants do not explain how Michigan law on setoff would vary (save for one instance) such that *Brown*'s holding is inapplicable.

Defendants only claim that Michigan law differs from California law, such that *Brown* is inapplicable, relies on Mich. Comp. Laws § 600.6008(b). That statute sets forth generally for the possibility of offsetting judgment executions: "Executions between the same parties may be set off one against another, if required by either party as follows." Mich. Comp. Laws § 600.6008. Subsection (b) provides:

> Such set off shall not be allowed unless all the parties are mutual debtors and creditors. Nor shall set off be allowed where the sum due on the first execution shall have been lawfully assigned to another person before the creditor in the second execution becomes entitled to the sum due thereon, or *as to so much of the first execution as may be due to the attorney in that suit for his taxable fees and disbursements*.

*Id*. (emphasis added). Defendants argue that this provision bars setoff of the first judgment creditor's attorneys' fees, it says nothing about barring the setoff of the second judgment creditor's attorneys' fees. Accordingly, Defendants conclude, the statute permits it.

But the statute does not control all setoff claims under Michigan law. Rather, it encodes a means by which countervailing judgments may be executed. Setoff itself is still an equitable tool arising from the common law. Michigan courts have recognized the difference and acknowledged that § 600.6008 does not govern claims of equitable setoff: "Although there is no statute specifically authorizing courts to order judgments satisfied by setoff, § 6008 . . . specifically authorizes the setoff of mutual executions. As such, § 6008 provides support for the notion that equitable setoff is an appropriate method of satisfying judgments." *Mahesh v. Mills*, 602 N.W.2d 618, 620 (Mich. Ct. App. 1999). Accordingly, § 600.6008 does not explicitly permit the setoff of attorneys' fees by a second-in-time judgment creditor and it does not govern the applicability of the equitable setoff rule.

Second, the *Brown* court noted that attorneys have a lien against the proceeds of a judgment at the time the attorney is retained. Thus, the attorney lien predates, and takes priority over, the setoff claim. Although the *Brown* court was applying California law, the same rule applies in Michigan. *See Doxtader v. Sivertsen*, 455 N.W.2d 437, 439 (Mich. Ct. App. 1990) ("This state recognizes a common-law attorney's lien on a judgment or fund resulting from the attorney's services.").

Third, the *Brown* court expanded upon the notion of the priority attorney lien by noting that the two judgments sought to be offset arise from wholly different actions. The court acknowledged the fact that the defendant's state court judgment was secured first "appears to weigh in favor of prioritizing offset." *Brown*, 2014 WL 2860631, at *4. Ultimately, however, the attorneys' fees claim had priority because the two actions were "wholly independent." *Id*. Here, like in *Brown*, the two judgments arise from wholly independent actions. As a result, the attorney lien retains priority over the offset claim.

Finally, in this case, Lundsted and his attorney have a contingency fee agreement. The *Brown* court noted that it did not have any information about the plaintiff's fee agreement with his attorney but that irrespective of the agreement it would not sway the inquiry. The same can be said here. A contingency fee agreement does to some degree favor setoff because a portion of the attorneys' fees obtained (perhaps a good majority) will remain with Lundsted. But this alone is insufficient to overcome the other three factors that do not favor offset. Further, to the extent Lundsted retains any portion of the fee award, it is money in his possession that he will apply to his expenses, including debt expenses. While this result does border on the very problem that setoff seeks to avoid (A paying B for B to pay A), setoff remains an equitable remedy and the equities favor not allowing setoff to apply to attorneys' fees.

**IV.**

The final issue raised by the parties is Lundsted's entitlement to a "reasonable attorney's fee as determined by the court." 15 U.S.C.A. § 1692k(a)(3).

The starting point in determining the reasonableness of attorneys' fees is the "lodestar" method. *Wayne v. Vill. of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994). Under this method, a reasonable rate is calculated by multiplying "the number of hours reasonably expended" by "a reasonable hourly rate." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)) (internal quotation marks omitted). "Next, the resulting sum should be adjusted to reflect the result obtained." *Id.* (internal quotation marks omitted). Adjustments may be made "to reflect relevant considerations peculiar to the subject litigation." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000).

Lundsted seeks an award of $13,113.50 in attorneys' fees in compensation for 54.2 hours of work performed by his attorneys on this case. Pl.'s Mot. Att'y Fees 5, ECF No. 37. In his reply brief in support of his motion for attorneys' fees Lundsted asks for "approximately $3000 extra in fees that Defendants' arguments caused Plaintiff to incur" as compensation for spending "3.7 hours preparing the reply brief on offset, and almost 8 hours in preparing this reply brief." Pl.'s Reply Br. 8 n.4, ECF No. 42.

**A.**

Lundsted's request to be compensated for 54.2 hours of work is facially reasonable. Defendants make allegations that Lundsted's attorneys "work[ed] up the file" after the case was settled. Defs.' Resp. Br. 11, ECF No. 40. Defendants support this claim by arguing that two thirds of the hours Lundsted seeks to have compensated were accrued after the case settled.

Defendants also claim that they sought to resolve the question of Lundsted's reasonable attorneys' fees but Lundsted would not disclose his attorneys' invoices.

There is no evidence, however, that Lundsted's attorneys "worked up the file" after settlement. Indeed, in the context of this FDCPA action, the "settlement" between the parties was only as to liability and the statutory damage amount. Both parties were aware that Lundsted's entitlement to reasonable attorneys' fees remained unresolved. The consent judgment submitted by the parties reflected as much. Similarly, the question of what portion of the monetary award received by Lundsted could be offset against JRV's underlying judgment also was unresolved. Thus, the "settlement" referenced by JRV did not resolve the case and make any further work by Lundsted's attorneys "waste." Rather, the "settlement" signaled the resolution of a core issue in the case—liability—and the beginning of litigation over two important issues that liability gave rise to—attorneys' fees and offset.

Considering the posture of the case at the time Lundsted accepted JRV's offer of judgment, the hours expended by JRV's counsel were not unreasonable. While there may be reason for imposing a reduction on the lodestar figure, the hours used to produce that figure are reasonable.

**B.**

Lundsted explains that his attorneys and their paralegals charged four different rates for the work they performed on his case. The two partners that worked on his case billed $300.00 per hour, the one associate billed $250.00 per hour, and the two paralegals billed $135.00 per hour. Defendants claim these figures are unreasonable.

The rates are not unreasonable. Although Defendants selectively cite to one case from this district that denied such rates, many cases from this district have approved these rates and

even rates in excess of these. *See, e.g.*, *Litt v. Portfolio Recovery Associates, LLC*, No. 13-12462, 2015 WL 1849267, at *3–4 (E.D. Mich. Apr. 22, 2015). The rates charged to Lundsted are reasonable.

## C.

The last step in the lodestar analysis is determining if any reductions to the lodestar figure are warranted. The Sixth Circuit has incorporated the twelve factors set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), as a starting point for determining if adjusting the lodestar figure is warranted. *Adcock-Ladd*, 227 F.3d at 349.[4] "Accordingly, modifications [to the lodestar] are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349-50 (6th Cir. 2000) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). A district court awarding fees "must provide a clear and concise explanation of its reasons for the fee award." *Wayne*, 36 F.3d at 533 (quoting *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995)).

Lundsted's fee award will be reduced for four reasons.

### 1.

First, Lundsted has billed for clerical tasks performed by paralegals and lawyers. "[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989). Defendants

---

[4] "These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Reed v. Rhodes*, 179 F.3d 453, 471–72 n.3 (6th Cir. 1999) (citing *Johnson*, 488 F.2d at 717–19).

catalog thirteen hours that they believe to have been spent on purely clerical tasks. That number is excessive.

In lieu of closely scrutinizing billing records and identifying specific hours to be eliminated, courts are permitted to simply reduce the award amount to account for any billing discrepancies. *See Helfman v. GE Grp. Life Assur. Co.*, No. 06-13528, 2011 WL 1464678, at *1 (E.D. Mich. Apr. 18, 2011) (discussing across-the-board reductions in the context of a party only achieving limited success). Rather than performing an itemized deduction as Defendant chose to, or assigning a percentage to this single discrepancy, all justifications for a reduction will be considered before any reduction is assigned.

**2.**

Next, Lundsted's attorneys billed at a full hourly rate for travel time. The Sixth Circuit has held that a court may apply a "relevant community" fee to an attorney's representation where "a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit[.]" *See Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). This principle is appropriately applied to transportation costs when billed at a full hourly rate by an attorney travelling from outside the court's territorial jurisdiction.[5] *See Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990) (finding no abuse of discretion where the district court compensated an attorney at a reduced rate for driving time). The billing of driving time at a full hourly rate favors some modest reduction.

**3.**

Third, Lundsted's attorneys engaged in block billing. While not particularly egregious here, the block billing by Lundsted's attorneys include some tasks that are clerical and some that

---

[5] Lundsted's attorney that billed for driving time, Ronald Weiss, is located within this district's territorial jurisdiction but outside of the division where the case has been heard. The same principal applies for attorneys from outside of the division.

are not. The practice of block-billing prevents accurately determining how much time was spent on tasks appropriately billed at a full rate and how much time was spent on purely clerical tasks. Block-billing falls below the standard of "sufficient detail" required to avoid a reduction of award. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (explaining how a reduction for block-billing is reasonable because it "makes it more difficult to determine how much time was spent on particular activities"). A small reduction of Plaintiff's award is warranted.

**4.**

Lastly, some of the itemized tasks submitted by Lundsted are incomplete. These entries total 3.8 hours. Billing records must "describe the work performed in sufficient detail to establish that the work is reasonably related" to the matter for which the fee is requested. *In re Pierce*, 190 F.3d 586, 593-94 (D.C. Cir. 1999). Where the detail in the billing records is insufficient the Court has discretion to reduce the award accordingly. *See Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) (quoting Hensley, 461 U.S. at 433). Lundsted's incomplete entries do not meet this billing standard. Accordingly, a reduction is warranted.

**5.**

In light of the foregoing adjustments, Lundsted's reasonable attorneys' fees will be reduced by a percentage reflecting those adjustments. Lundsted's fees will be adjusted downwards by 15%. Thus, Lundsted's total fee award is $11,145.63.

**D.**

The next topic that must be addressed is Lundsted's request for additional fees related to his reply briefing on both topics under consideration. In his reply brief in support of his motion for attorney fees, Lundsted writes:

> Plaintiff's counsel spent 3.7 hours preparing the reply brief on offset, and almost 8 hours in preparing this reply brief in effort to address all of the points argued by Defendants. This time was also necessarily spent on the reasonable prosecution of this case, and Plaintiff would request leave from the Court to supplement the motion to detail these fees and obtain the approximately $3000 extra in fees that Defendants' arguments caused Plaintiff to incur in reply.

Pl.'s Reply Br. 8 n.4, ECF No. 42.

Plaintiff's request will be denied. First, under the local rules, parties may not file counter-motions in reply briefs. Eastern District of Michigan Electronic Filing Policies and Procedures R5(e) (cannot have a counter-motion in a reply). Nor may a party raise an argument for the first time in a reply brief. Second, the request made in Lundsted's footnote, falls below the required specificity for submitting itemized fee bills. Finally, Lundsted's reply brief in support of his motion for attorneys' fees does not comport with the local rules formatting requirements. Under the local rules, reply briefs are limited to seven pages, E.D. Mich. LR 7.1(d)(3)(B), and all submissions must be in 14-point proportional font, E.D. Mich. LR 5.1(a)(3). Lundsted's reply brief, which is the bulk of the hours he seeks to have compensated, is ten pages long and in 12-point font. If considered on the merits, Lundsted's claim for additional fees would warrant significant reduction on that basis, if not complete denial.

### E.

The last issue of compensation is the costs billed by Lundsted. Lundsted billed Defendants for $518.00 in costs. Bill of Costs, ECF No. 38. This figure included $400.00 for "Fees of the Clerk" and $118.00 for "[f]ees for service of summons and subpoena." *Id*. Defendants argue that they should not be billed for service fees because they waived service. Lundsted argues that irrespective of Defendants' waiver, the costs were incurred and should be billed. The dispute over service costs arises out of an earlier dispute about whether service was

properly effectuated on Defendants. Defendants argued that they were not properly served but then eventually waived service.

Lundsted will be compensated for service costs where service was effectuated but Defendants claimed it was not done properly and then Defendants ultimately waived service. This circumstance differs from a situation where a defendant waives service before it is even attempted. In such a situation imposing service costs would likely be unequitable. Here, imposing service costs is fair.

**V.**

Accordingly, it is **ORDERED** that Defendants' motion to vacate the consent judgment, ECF No. 27, is **DENIED**.

It is further **ORDERED** that Defendants are permitted a right to set off their liability in this matter against the underlying judgment they hold to the extent explained herein.

It is further **ORDERED** that Plaintiff Craig Lundsted's motion for attorneys' fees, ECF No. 37, is **GRANTED in part**.

It is further **ORDERED** that Defendants are **DIRECTED** to compensate Plaintiff Craig Lundsted **$11,663.63** for costs and fees incurred in this matter.

Dated: April 27, 2016                                  s/Thomas L. Ludington
                                                        THOMAS L. LUDINGTON
                                                        United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 27, 2016.

                                    s/Michael A. Sian
                                    MICHAEL A. SIAN, Case Manager