UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CRAIG LUNDSTED,

          Plaintiff,          Case No. 14-cv-13981

v.          Honorable Thomas L. Ludington

JRV HOLDINGS, LLC, et al.,

          Defendants.

_____/

**ORDER DIRECTING SUBMISSION OF FEE ARRANGEMENT**

On December 2, 2017, the Court granted Plaintiff Lundsted's motion for sanctions and directed Lundsted's counsel to submit an affidavit summarizing the expenses incurred in bringing the motion. The factual predicate to the motion for sanctions, as described in the order granting sanctions, will be reproduced here.

On October 15, 2014, Plaintiff Craig Lundsted filed this action against Defendants JRV Holdings, LLC, and Roosen Varchetti & Olivier, PLLC. ECF No 1. In his complaint, Lundsted alleged that Defendants violated the Fair Debt Collection Practices Act ("FDPCA") and the Truth in Lending Act ("TILA"). *Id.* Roosen, Varchetti, & Oliver, PLLC, and JRV Holdings, LLC then filed an answer. ECF No. 12. On April 24, 2015, Lundsted filed a notice that he had accepted Defendants' offer of judgment. ECF No. 22. The parties agreed that Lundsted was entitled to a judgment for $1,000.00 in statutory damages, exclusive of reasonable attorney fees and costs. *Id.* Defendants' offer of judgment provided for "judgment to be entered against [the Defendants] and in favor of Plaintiff in the amount of $1000, plus a reasonable attorney fee, costs and interests, if any, to be determined by the court. This offer is made without regard to and

does not impact JRV's rights to set-off the judgment it holds against Plaintiff." *Id.* Defendants had obtained a prior judgment in state court of $11,548.68 against Lundsted on January 29, 2014. *See* Request and Order to Seize Property, ECF No. 48, Ex. A. On April 24, 2015, Lundsted filed a notice of acceptance of Defendants' offer of judgment. ECF No. 24. On August 31, 2015, the Court entered a consent judgment of $1,000.00 in favor of Lundsted, not including attorney fees, interpreting the setoff language as providing that the judgment was not meant to enlarge or diminish JRV's right to set off under existing law and thus unnecessary to the judgment. ECF No. 26. That consent judgment provided that a motion for attorney fees and a bill of costs was to be furnished by Plaintiff within twenty-one days of judgment, but did not include the set off language quoted above.

On September 1, 2015, Defendants filed a motion to vacate the consent judgment, arguing that because the consent judgment did not include the language retaining the right of setoff, Defendants had not agreed to its terms. ECF No. 27. On November 30, 2015, the parties attended a status conference with the Court. ECF No. 35. At the conference, the parties agreed that the right of setoff applied to the amount of the $1,000 judgment but disputed whether the attorney fees that Plaintiff was entitled to recover could be set off against Defendants' state court judgment. Accordingly, the parties furnished briefing on that issue. On April 27, 2016, the Court issued an opinion which found that the state court judgment could be set off against the $1,000.00 statutory judgment, but not against the attorney fees awarded in the federal case. ECF No. 47. The Court further ordered Defendants to "compensate Plaintiff Craig Lundsted $11,663.63 for costs and fees incurred" in the case. *Id.* at 15.

In concluding that Lundsted's award of reasonable attorney fees was not subject to setoff against Defendants' state court judgment, the Court mentioned several factors. The Court noted

that "[u]nlike set off of the statutory penalty, allowing set off of attorney fees would chill future FDCPA actions and discourage attorneys from taking FDCPA cases." *Id.* at 7. In support, the Court discussed the hypothetical scenario where "the setoff would swallow the FDCPA award and leave the FDCPA plaintiff's attorney without any compensation for reaching a successful result." The Court further emphasized that, under Michigan law, attorneys obtain a lien against the proceeds of a judgment when the attorney is retained, and that the attorney lien in this case would have priority over the offset claim. *Id.* at 8. Finally, the Court discussed the relevance of the fact that Lundsted and his attorney had a contingency fee arrangement:

> A contingency fee agreement does to some degree favor setoff because a portion of the attorney's fees obtained (perhaps a good majority) will remain with Lundsted. But this alone is insufficient to overcome the other three factors that do not favor offset. Further, to the extent Lundsted retains any portion of the fee award, it is money in his possession that he will apply to his expenses, including debt expenses. While this result does border on the very problem that setoff seeks to avoid (A paying B for B to pay A), setoff remains an equitable remedy and the equities favor not allowing setoff to apply to attorney's fees.

*Id.*

On August 11, 2016, Lundsted filed a motion for sanctions. On October 19, 2016, the Court held a hearing on the motion for sanctions. That hearing was continued on November 9, 2016. On October 19, 2016, Mr. and Mrs. Lundsted both testified about the events in question. Oct. 19 Hearing Tr., ECF No. 53. Mrs. Lundsted testified that a court officer rang her doorbell on the morning in question. *Id.* at 32. The man, later identified as Scott Hope, told Mrs. Lundsted that he had a court order to seize property. *Id.* Mrs. Lundsted told the officers that her husband was golfing and would be home later in the day. *Id.* at 33. Mr. Hope testified that he talked cordially with Mrs. Lundsted for a while before leaving.

Mr. Lundsted testified that his wife called him while he was golfing and informed him of Mr. Hope's visit. *Id.* at 13. After Mr. Lundsted finished his round of golf, he returned home.

Several hours later, Mr. Hope arrived. *Id.* at 14. Another individual, later identified as Chris Lackney, was also present, but Mr. Lundsted testified that he never interacted with Mr. Lackney. *Id.* at 15. Mr. Lundsted testifies that Mr. Hope informed Mr. Lundsted that he was entitled to a check. *Id.* Mr. Hope also stated that if Mr. Lundsted endorsed the check over in satisfaction of the state court judgment, the debt would be canceled. *Id.* at 16. Mr. Lundsted testified that Mr. Hope represented that, if Mr. Lundsted did not sign over the check, Mr. Hope would seize Mr. Lundsted's property, including his vehicles. *Id.* at 15–17. Mr. Lundsted endorsed the check.

Mr. Lundsted repeatedly asserted at the hearing that he was "scared senseless" by the encounter and did not understand the significance of the check. *Id.* at 18–19; 23–25. Mr. Lundsted also testified that Mr. Hope was wearing an outfit that resembled a uniform, including a state of Michigan patch. *Id.* at 20. Mrs. Lundsted's account substantially corroborates her husband's version of events.

On November 9, 2016, Mr. Hope testified about the events in question. He explained that the encounter with Mr. and Mrs. Lundsted seemed friendly and non-confrontational for the most part. Mr. Hope acknowledged that he mentioned the check as a way for Mr. Lundsted to avoid seizure of any other property. He also acknowledged that he told Mr. Lundsted that he would seize property to collect the judgment if he did not endorse the check.

The Court granted Lundsted's motion for sanctions and directed Lundsted's counsel to file an affidavit listing the costs incurred. Lundsted's counsel has filed that affidavit, but Defendants now argue that they should not be ordered to pay those costs.

**I.**

In the order granting sanctions, the Court explained that:

> Defendants' counsel's actions disregarded Plaintiff counsel's common law retaining lien on the attorney fees award, a matter that could be no surprise to

Defendants' counsel. As the Court reviewed in the April 27, 2016, order, attorneys in Michigan receive a prioritized attorney lien against the proceeds of a judgment. *See* ECF No. 45. *See also Doxtader v. Sivertsen*, 455 N.W.2d 437, 439 (Mich. Ct. App. 1990). The "attorney's charging lien is an equitable right inherent in the judgment." *Brian Lavan & Associates, P.C. v. Livingston Cty. Circuit Court Clerk*, No. 293052, 2010 WL 4103174, at *2 (Mich. Ct. App. Oct. 19, 2010).

December 2, 2016, Op. & Order at 7, ECF No. 54.

The Court further reasoned:

> . . . In *Doxtader*, the plaintiff had entered into a contingency fee arrangement with an attorney. *Id.* at 438. A default judgment in the amount of $25,000 was entered against the defendant. *Id.* "Without plaintiff's attorney's knowledge or consent, plaintiff and defendant thereafter allegedly agreed to settle [the] matter for $1,500." *Id.* The attorney moved to set aside the satisfaction of judgment, arguing that he had a lien on the judgment and that the plaintiff did not have the authority to settle the judgment in prejudice to his lien. *Id.* The Michigan Court of Appeals held that the satisfaction of judgment should be set aside to the extent of the attorney's lien.
>
> Defendants cannot dispute in good faith that they had notice of the attorney's lien on the judgment, especially because it was expressly *for attorney's fees* and because the Court's order explicitly pointed out that Plaintiff's counsel would have a lien on the judgment. Although an "attorney's lien is not enforceable against a third party unless the third party had actual notice of the lien," the process servers here were representatives of Defendants, who had notice. *Id.* at 439. As in *Doxtader*, the parties could not in good faith agree to a use of the funds upon which Plaintiff's counsel had a lien without counsel's consent.

*Id.* at 8.

Accordingly, the Court directed Lundsted's counsel to submit an affidavit explaining the costs and fees it incurred in representing Lundsted on this issue. On December 14, 2016, Lundsted's counsel submitted a declaration stating that $8,794 in attorney fees and costs were incurred. Once added to the $11,663.63 judgment which was the subject of the sanctionable behavior by Defendants, the total comes to $20,457.63. Lundsted also requests that an additional $1,114.95 be added because Defendants collected that amount of money from Lundsted beyond the amount of Defendants' state court judgment against Lundsted.

In response, Defendants make several arguments. First, Defendants argue that Lundsted did not request sanctions based on Defendants' disregard of the attorney's lien and thus Lundsted is seeking compensation for work spent on legal issues on which Lundsted did not prevail. Defendants further argue that some of the costs Lundsted's counsel are asserting include hours billed for work that was unnecessary or clerical. Finally, Defendants argue that under Michigan law, an attorney's lien will be enforced only if the attorney provides a copy of the contingency agreement. Once that is filed, then the lien is executed in the amount provided in the agreement. Defendants assert that because Lundsted's counsel never disclosed the details of the agreement with Lundsted, Defendants should not be required to pay the entire amount.

**II.**

For the following reasons, Defendants' arguments will be rejected, with two exceptions. Lundsted's counsel will be directed to submit the fee agreement. Upon receipt of that agreement, Defendants will be directed to pay Lundsted's counsel the funds it is entitled to.

**A.**

First, Defendants argue that Lundsted should not be awarded fees because he ultimately prevailed on a theory which was not asserted in his briefing. This argument misses the mark. The Court sanctioned Defendants under its inherent power to impose "sanctions when a party attempts to avoid satisfying a binding judgment in bad faith." December 2, 2016, Op. & Order at 5. That order rested on the conclusion that because Defendants had clear notice of Lundsted's counsel's lien on the judgment, their actions in executing on the check were "not in good faith." *Id.* at 8. Given that reasoning, it is manifestly clear that the precise theory on which Lundsted's counsel prevailed has no relevance to whether he should be compensated for the work spent bringing the motion. Defendants cite *Hensley v. Eckerhart* for the proposition that "no fee may

be awarded for services on [an] unsuccessful claim. 461 U.S. 424, 435 (1983). But *Hensley* involved civil rights litigation where the lawsuit involved "distinctly different claims for relief that are based on different facts and legal theories." *Id.* at 434. The Supreme Court also explained that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 435.

The Court's December 2, 2016, order *sanctioned* Defendants, through the Court's inherent equitable authority to do so, because they could not have consciously disregarded the attorney's charging lien in good faith. Defendants assert that the Court rejected Lundsted's arguments that Defendants' counsel orchestrated a "coercive" situation, but that is inaccurate. In the December 2, 2016, opinion and order, the Court stated that "[w]hile [it] might be true [that Lundsted was coerced into handing over the check], it is clearly the case that Defendants' counsel knew the funds were to compensate counsel and retained an agent to deliver the check to Lundsted without Lundsted's counsel's knowledge." December 2, 2016, Op. & Order at 7.

While not highlighted in the opinion, Roosen, Varchetti, and Oliver did solicit the check for attorney fees (payable to Lundsted) from its client, obtained the order to seize property pursuant to the state court judgment, and then retained Mr. Hope and his associates to personally deliver the check and order for seizure on Lundsted in a coordinated fashion, thus depriving Lundsted's counsel of its attorney fees. Roosen is also responsible for Mr. Hope's representation to Lundsted, as its agent, that his best alternative to seizure of his personal property was to endorse the check for attorney fees. Both Defendants' disregard of the retaining lien and arrangement of the coercive situation whereby Defendants' representative prevailed upon Lundsted to satisfy a judgment with fees earmarked for his attorney support the conclusion that

Defendants' actions were taken in bad faith. Lundsted should not have been required to bring the motion for sanctions.

**B.**

Defendants also argue that they should not be required to pay the $11,663.63 in awarded attorney fees to Lundsted's counsel because Lundsted's counsel has not disclosed the terms of its contingency agreement with Lundsted. In support of this argument, Defendants cite to *Doxtader v. Sivertsen*, 183 Mich. App. 812, 816 (1990) and *Grand Rapids & I. Ry. Co. v. Cheboygan Circuit Judge*, 161 Mich. 181, 191 (1910). Those cases outline the process in Michigan for setting aside a judgment and enforcing an attorney's lien. Defendants correctly point out that the courts in those cases directed the attorneys to disclose their agreement with counsel and thus establish the exact amount of fees to which they were entitled.

Defendants' argument is premised on a misunderstanding of the reason the Court cited *Doxtader* in the December 2, 2016, opinion and order. The Court is sanctioning Defendants for bad faith conduct pursuant to the Court's inherent equitable authority. Defendants' disregard of the charging lien was evidence of Defendants' bad faith. Plaintiff's counsel are not directly attempting to enforce their attorney's lien. Rather, Lundsted's counsel is arguing that Defendants' actions disregarded the Court's order granting attorney fees. Thus, the disregard of the attorney's lien provides the basis for the Court's conclusion that Defendants acted in bad faith, but the attorney's lien is not the authority supporting the order to the Defendants to pay Plaintiff's legal expenses. The basis for the payment order is the Court's equitable authority to "guarantee the integrity of the court and its proceedings," not Michigan law regarding enforcement of an attorney's charging lien. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). Thus, Lundsted's counsel need not necessarily comply

with the procedures for enforcing an attorney's lien under Michigan law. Equity demands that Plaintiff's counsel receive his awarded costs and fees.[1]

However, Defendants' argument that Lundsted should be ordered to disclose the terms of its agreement with Lundsted is well taken for a separate reason. Lundsted's counsel was prejudiced by Roosen's payment to Lundsted directly only to the extent that funds allocated to his counsel were used to satisfy the judgment against Lundsted personally. At the hearing, the Court and Defendants inquired into the details of the fee arrangement with Lundsted. At that time, Mr. Lundsted's counsel declined to disclose the details of the arrangement, but indicated that he would discuss disclosure with his co-counsel. The fee agreement has apparently not been provided since the hearing. To avoid an inequitable result, Lundsted's counsel will be directed to submit his fee agreement with Lundsted to the Court so that the amount of funds counsel was deprived of can be determined. Defendants will then be ordered to pay the fees Lundsted's counsel is entitled to under the agreement directly to counsel.[2]

## C.

The only remaining issue is whether Lundsted's counsel's expenses incurred in litigating this motion were reasonable. First, Defendants argue that Plaintiff's counsel is seeking "reimbursement for making docketing entries and other work that is clearly clerical and not compensable." Def. Resp. at 3. Plaintiff's counsel is seeking reimbursement for .6 hours of paralegal work at $135 an hour, for a total of $81. "[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins by Agyei*,

---

[1] Defendants object that "if Lundsted's counsel maintains that part of the $11,663.63 paid to Mr. Lundsted belonged to counsel and Mr. Lundsted does not agree, Mr. Lundsted must return the proceeds to JRV and the lien issue decided [sic] by the Court." Def. Resp. at 4 n. 3, ECF No. 56. The Court disagrees. If Plaintiff's counsel is not entitled to all of the awarded attorney fees, then Plaintiff's counsel has a legal and ethical obligation to tender the remaining funds to Lundsted. However, that is a matter for Lundsted and his counsel to work out between them.

[2] As discussed below, Lundsted's counsel's request of $8,713 in fees incurred in litigating this motion is reasonable and will be granted. For convenience, the Court will wait to order payment of those fees until the final amount of fees is determined.

491 U.S. 274, 288 n.10 (1989). The Court has reviewed the submitted time sheet and agrees that the paralegal tasks which Plaintiff's counsel is billing for are purely clerical or secretarial. Plaintiff's counsel will not be awarded that $81. The Court has independently reviewed Plaintiff's counsel's remaining asserted costs and finds them reasonable given the fact that a motion, related briefing, two days hearings, and then a supplemental affidavit were required to resolve this issue.

Finally, Lundsted's counsel argues that the Court should award an additional $1,114.95 because Defendants collected more money from Lundsted than they were entitled to under the state court judgment. That number is accurate only if Defendants set off the $1,000 consent judgment which the Court previously held *could* be set off against the state court judgment. But Plaintiff's counsel has previously argued that Defendants did not set off that $1,000. *See* Mot. Sanctions at 8, ECF No. 47. Defendants were not required to set off that judgment. Thus, Defendants simply collected $114.95 above the amount of the state court judgment from Lundsted. Defendants assert, without citation to legal authority, that the overcollection was lawful because "there were costs attendant to collection that are recoverable under Michigan law." Def. Resp. at 5 n. 4. Lundsted has not briefed this issue. But regardless of whether that representation is true, any overcollection made by Defendants should be challenged as wrongful execution on the state court judgment in state court. The Court does not have jurisdiction to enforce executions on state court judgments. Accordingly, the additional $1,114.95 which Lundsted is requesting will not be granted.

### III.

Accordingly, it is **ORDERED** Plaintiff Lundsted's counsel is **DIRECTED** to submit its fee agreement with Lundsted **on or before April 17, 2017.**

Dated: April 12, 2017	s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 12, 2017.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager