UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CRAIG LUNDSTED,

          Plaintiff,          Case No. 14-cv-13981

v.          Honorable Thomas L. Ludington

JRV HOLDINGS, LLC, et al.,

          Defendants.

_____/

**ORDER DIRECTING PAYMENT**

A consent judgment was entered in this case on August 31, 2015. ECF No. 26. Post-judgment proceedings continue. The unnecessarily complex and protracted proceedings are primarily assignable to Defendants' bad faith practice. Plaintiff's motion for sanctions has already been granted. The monetary amount of the award will be finalized in this order. Additional punitive sanctions will also be levied against Defendants and Defendants' counsel for the reasons stated below. The factual predicate to the motion for sanctions will be summarized here.

**I.**

On October 15, 2014, Plaintiff Craig Lundsted filed this action against Defendants JRV Holdings, LLC, ("JRV") and Roosen Varchetti & Olivier, PLLC ("Roosen"). ECF No 1. In his complaint, Lundsted alleged that JRV Holdings, LLC, purchased the debt Lundsted originally owed to U.S. Bank and ultimately obtained a judgment against Lundsted in Michigan's 81st District Court for $11,548.68 on January 29, 2014. *See* Request and Order to Seize Property, ECF No. 48, Ex. A. Lundsted further alleged that Defendants violated the Fair Debt Collection

Practices Act ("FDPCA") and the Truth in Lending Act ("TILA") by misrepresenting the "character, status, or legal amount of the Debt." Compl. at 4. On April 24, 2015, Lundsted filed a notice that he had accepted Defendants' offer of judgment in this case. ECF No. 22. The parties agreed that Lundsted was entitled to a judgment of $1,000.00 in statutory damages, exclusive of reasonable attorney fees and costs. *Id.* Defendants' offer of judgment provided for "judgment to be entered against [the Defendants] and in favor of Plaintiff in the amount of $1000, plus a reasonable attorney fee, costs and interests, if any, to be determined by the court. This offer is made without regard to and does not impact JRV's rights to set-off the judgment it holds against Plaintiff." *Id.* On April 24, 2015, Lundsted filed a notice of acceptance of Defendants' offer of judgment in the FDCPA case. ECF No. 24. On August 31, 2015, the Court entered a consent judgment of $1,000.00 in favor of Lundsted, not including attorney fees, interpreting the setoff language as providing that the judgment was not meant to enlarge or diminish JRV's right to set off under existing law and thus unnecessary to the judgment. ECF No. 26. That consent judgment provided that a motion for attorney fees and a bill of costs was to be furnished by Plaintiff within twenty-one days of judgment, but did not include the set off language quoted above.

On September 1, 2015, Defendants filed a motion to vacate the consent judgment, arguing that because the consent judgment did not include the language extending the right of setoff to the prospective recovery of attorney fees in addition to the judgment, Defendants had not agreed to its terms. ECF No. 27. On November 30, 2015, the parties attended a status conference with the Court. ECF No. 35. At the conference, the parties agreed that the right of setoff applied to the amount of the $1,000 judgment but disputed whether the attorney fees that Plaintiff was entitled to recover under the FDCPA could be set off against Defendants' state

court judgment. Accordingly, the parties furnished briefing on that issue. On April 27, 2016, the Court issued an opinion which confirmed that the state court judgment could be set off against the $1,000.00 statutory judgment, but not against the attorney fees awarded in the FDCPA case. ECF No. 47. The Court further found that Defendants should "compensate Plaintiff Craig Lundsted $11,663.63 for costs and fees incurred" in the case. *Id.* at 15.

In concluding that Lundsted's award of reasonable attorney fees was not subject to set off against Defendants' state court judgment, the Court mentioned several factors. The Court noted that "[u]nlike set off of the statutory penalty, allowing set off of attorney fees would chill future FDCPA actions and discourage attorneys from taking FDCPA cases." *Id.* at 7. In support, the Court discussed the hypothetical scenario where "the setoff would swallow the FDCPA award and leave the FDCPA plaintiff's attorney without any compensation for reaching a successful result." The Court further emphasized that, under Michigan law, attorneys obtain a lien against the proceeds of a judgment when the attorney is retained, and that the attorney lien in this case would have priority over the offset claim. *Id.* at 8. Finally, the Court discussed the relevance of the fact that Lundsted and his attorney had a contingency fee arrangement:

> A contingency fee agreement does to some degree favor setoff because a portion of the attorney's fees obtained (perhaps a good majority) will remain with Lundsted. But this alone is insufficient to overcome the other three factors that do not favor offset. Further, to the extent Lundsted retains any portion of the fee award, it is money in his possession that he will apply to his expenses, including debt expenses. While this result does border on the very problem that setoff seeks to avoid (A paying B for B to pay A), setoff remains an equitable remedy and the equities favor not allowing setoff to apply to attorney's fees.

*Id.*

**A.**

On August 11, 2016, Lundsted filed a motion for sanctions alleging that Defendants had purposefully disregarded the Court's order prohibiting set off of the attorney fees. ECF No. 47.

On October 19, 2016, the Court held a hearing on the motion for sanctions. That hearing was continued on November 9, 2016. On October 19, 2016, Mr. and Mrs. Lundsted both testified about the events in question. Oct. 19 Hearing Tr., ECF No. 53. Apparently, the day after the order determining setoff rights and granting attorney fees was issued, Defendant Roosen secured an Order to Seize Property (writ of execution) from the 81st District Court. Defendant Roosen also secured a cashiers check made payable to Lundsted for $11,663.63, the amount of the attorney fees which this Court ordered to be paid. Then Defendant Roosen arranged for two court officers from Scott Hope's business to travel to Lundsted's home on May 19, 2016. Mrs. Lundsted testified that a court officer rang her doorbell on the morning in question. *Id.* at 32. The man, later identified as Scott Hope, told Mrs. Lundsted that he had a court order to seize property. *Id.* Mrs. Lundsted told the officers that her husband was golfing and would be home later in the day. *Id.* at 33.

Mr. Lundsted testified that his wife called him while he was golfing and informed him of Mr. Hope's visit. *Id.* at 13. After Mr. Lundsted finished his round of golf, he returned home. Several hours later, Mr. Hope arrived. *Id.* at 14. Another individual, later identified as Chris Lackney, was also present, but Mr. Lundsted testified that he never interacted with Mr. Lackney. *Id.* at 15. Mr. Lundsted testified that Mr. Hope informed him that he was entitled to the check for $11,663.63, which Mr. Lundsted was unaware of. *Id.* Mr. Hope also told Mr. Lundsted that if he endorsed the check over in satisfaction of the state court judgment, the debt would be canceled. *Id.* at 16. Mr. Lundsted testified that Mr. Hope represented that, if Mr. Lundsted did not sign over the check, Mr. Hope would seize Mr. Lundsted's property, including his vehicles. *Id.* at 15–17. Mr. Lundsted endorsed the check. Plaintiff's counsel learned of the events when he emailed Roosen explaining that "the deadline for an appeal has come and gone, so please let us know

when we can expect payment or if you need any logistical information from us to wrap this matter up." Email Correspondence, ECF No. 48, Ex. C. He was informed the next day that "[a]s per the court order, your client was paid the amount ordered directly." *Id.*

Mr. Lundsted repeatedly asserted at the hearing that he was "scared senseless" by the encounter and did not understand the significance of the check. *Id.* at 18–19; 23–25. Mr. Lundsted also testified that Mr. Hope was wearing an outfit that resembled a uniform, including a state of Michigan patch. *Id.* at 20. Mrs. Lundsted's account substantially corroborates her husband's version of events.

On November 9, 2016, Mr. Hope testified about the events in question. He explained that the encounter with Mr. and Mrs. Lundsted seemed friendly and non-confrontational for the most part. Mr. Hope acknowledged that he mentioned the check as a way for Mr. Lundsted to avoid seizure of any other property. He also acknowledged that he told Mr. Lundsted that he would seize property to collect the judgment if he did not endorse the check.

**B.**

The Court granted Lundsted's motion for sanctions and directed Lundsted's counsel to file an affidavit listing the costs incurred in bringing the motion. Lundsted's counsel filed that affidavit.
Defendants argued that no fees should be awarded. Defendants' arguments were frivolous and rejected by the Court. ECF No. 58. But the Court sua sponte determined that review of the fee agreement was necessary to determine "the amount of funds counsel was deprived of." *Id.* at 9. In the order, the Court concluded that the total amount of funds properly sought by Plaintiff came to $20,376.63, but declined to enter an order directing payment of that amount until after the fee agreement was provided.

On May 17, 2017, Plaintiff's counsel submitted the fee agreement. ECF No. 62. The agreement includes two relevant provisions:

> 3. We will not charge you for Attorneys' Fees. Attorneys will prosecute Client's claim under statutory and/or common law theories that may allow Client to recover Attorneys' fees from the defendant if the claim is successful. For each settlement, arbitration award or verdict, Attorneys shall receive compensation calculated according to the number of hours spent on the case at the attorney and paralegal rates set forth below (the "traditional lodestar method"). The firm's billing rates are as listed in "Exhibit A," attached hereto.
>
> 4. As an alternative, Attorneys may elect compensation based upon forty percent of the Gross Fund obtained from any one defendant. "Gross Fund" shall mean the total amount of money that is recovered from any one defendant, including damages, fees, costs and the amount of any waiver (or partial waiver) of any alleged financial obligation underlying Client's claims.

Fee Agreement at 1, ECF No. 62.

The Court's order did not direct Defendants to file a response to the fee agreement, but Defendants elected to do so anyway. As explained below, the arguments raised in that response brief are also frivolous.

## II.

### A.

In its most recent (and unsolicited) brief, Defendants contend that the fee agreement is unenforceable because it violates the Michigan Rules of Professional Conduct, specifically MRPC 1.5, 1.7(b), and 1.8(j). Defendants have not advanced any good faith argument that any of those provisions are violated by the agreement.

Michigan Rule of Professional Conduct 1.5(a) prohibits "clearly excessive" fees, while Rule 1.5(c) requires "contingent-fee agreement[s]" to be in writing. Neither provision is violated here. Suits alleging violations of the Fair Debt Collection Practices Act, like this one, almost always involve small judgments and comparatively large attorney fee recoveries. That dynamic

- 6 -

is accepted (and even intended): "A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious . . . claims but relatively small potential damages to obtain redress from the courts." *County of Riverside v. Rivera*, 477 U.S. 561, 578 (1986). *See also Mann v. Acclaim Financial Services, Inc.*, 348 F. Supp. 2d 923, 927 (S.D. Ohio 2004) ("A reasonable fee is one that is adequate to attract competent counsel, but which does not produce a windfall to the attorney."). The Court has already rejected Defendant's argument that the fees which Plaintiff's counsel seeks are unreasonable. *See* April 12, 2017, Op. & Order at 10, ECF No. 58.

Likewise, the fee agreement clearly provides, in writing, the means by which the fee is calculated. The fee agreement does provide an alternative means of calculating attorney fees, but the method to be used will almost always be easily discernable at the time the agreement is entered into. If the cause of action is premised on a statute that limits damages (like the Fair Debt Collection Practices Act), then the contingent fee will be based on the traditional lodestar method. If the amount of recovery is not limited (or lodestar recovery is inapplicable), then the 40% contingency arrangement would govern. And, most importantly, the State Bar of Michigan has issued a formal opinion which confirms that arrangements like the one here are not per se improper. *See* RI-6 Formal Opinion, http://www.michbar.org/opinions/ethics/numbered_opinions?OpinionID=876&Type=6&Index=.

Michigan Rule of Professional Conduct 1.7(b) provides that "[a] lawyer shall not represent a client if the representation of that client may be materially limited . . . by the lawyer's own interests." Rule 1.8(j) prohibits a lawyer from acquiring "a proprietary interest in the cause of action" *except* the lawyer may "contract with a client for a reasonable contingent fee in a civil case." *Id.* at Rule 1.8(j)(2). Defendants argue that the fee arrangement creates a conflict of

interest because the "lawyer's 'own interest' is that it collects the full award under ¶3, but the client's interest clearly lies in collecting at least some of the fee award." Def. Resp. Br. at 2, ECF No. 63. This argument is nonsensical. A client will always have an interest in obtaining more money than less, but an attorney does not cheat his or her client by recovering an attorney fee payment and not providing a portion to the client. The fee arrangement here clearly sets out, at the beginning of the representation, how the attorney's fees will be paid. The Michigan Rules of Professional Conduct expressly permit contingent fees in civil cases, and the State Bar of Michigan has specifically approved simultaneous "settlement of the merits and the attorney fee." *See* C-235 Formal Opinion, http://www.michbar.org/opinions/ethics/numbered_opinions?OpinionID=26&Type=6&Index=F. The Rules of Professional Conduct and the State Bar's Formal Opinions establish the unremarkable fact that a lawyer does not have a conflict of interest with his or her client simply because the lawyer is seeking an award of attorney fees or is proceeding on a contingency fee arrangement.

Finally, Defendants argue that "virtually all of the litigation was incurred in order to increase counsel's proprietary interest in the case, without regard to any benefit or . . . cost to Mr. Lundsted." Def. Resp. Br. at 2. That statement is manifestly incorrect. Judgment in this case was entered on August 31, 2015, (nearly two years ago) and payment of attorney fees was ordered on December 4, 2015. Plaintiff's counsel has been deprived of the fees to which they are entitled for over a year and a half because Defendants have sought at every step to delay and frustrate their collection of those fees. Defendants' assertion that Plaintiff's counsel is at fault for attempting to recover his rightful fees despite Defendants' attempts to avoid payment of those fees is without merit.

In short, Defendants have not identified any authority to support the argument that the fee agreement is invalid and unenforceable. Under the provision whereby Plaintiff's counsel has sought attorney fees, he is entitled to 100% of the lodestar amount. The Court has already determined that amount and found that Plaintiff counsel's request is reasonable. Accordingly, Defendants will be directed to pay $20,376.63 directly to Plaintiff's counsel.

**B.**

Given the background of this case, however, compensatory sanctions alone are insufficient. District courts have the inherent power to award sanctions when parties act in bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). That power is derived from the court's "equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). Specifically, federal courts are justified in imposing sanctions when a party attempts to avoid satisfying a binding judgment in bad faith. *In re John Richards Homes Bldg. Co., L.L.C.*, 404 B.R. 220, 227 (E.D. Mich. 2009). *See also John Akridge Co. v. Travelers Companies*, 944 F. Supp. 33, 34 (D.D.C. 1996) (sanctioning plaintiffs because they filed the suit in bad faith and in an attempt to "improperly circumvent the Court's ruling in their previous case"). Bad faith is established when an attorney delays or disrupts litigation or hampers enforcement of a court order. *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978). The district court's inherent power to sanction can be directed against both attorneys and parties. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008).

Viewed as a whole, Defendants' actions demonstrate a pattern of obstructive, bad faith behavior. This is a case that began almost three years ago, with allegations that Defendants engaged in unlawful debt collection practices. A consent judgment was reached, but Defendants

attempted to premise the consent judgment on a right to set off the attorney fees award against a separate state court judgment that Defendants held against *Plaintiff*. The Court rejected that argument, finding that "allowing set off of attorneys' fees would chill future FDCPA actions and discourage attorneys from taking FDCPA cases." April 27, 2016, Op. & Order at 7. More specifically, "'offset is . . . patently unfair where it would effectively force attorneys to satisfy the debts of their clients.'" *Id.* (quoting *Brown v. Mandarich Law Grp., LLP*, No. 13-CV-04703, 2014 WL 2860631 at *3 (N.D. Cal. June 23, 2014)). Finally, the Court explained that Plaintiff's attorneys had a prioritized attorney lien against the attorney fees award. *Id.* at 8.

Despite that clear language, Defendants contrived a scenario where their agent presented Lundsted with the check for attorney fees but pressured him to sign over that check back to Defendants, purposefully avoiding any communication with Plaintiff's counsel. For all intents and purposes, Defendants achieved exactly what the Court concluded they should not: they convinced Lundsted to use the attorney fees award, meant for counsel, to pay off the JRV judgment against Lundsted personally.

Having been entirely deprived of their fees, Plaintiff's counsel brought a motion for sanctions, which the Court granted. December 2, 2016, Op. & Order. The Court directed Plaintiff's counsel to file an affidavit explaining the costs and fees incurred in bringing the motion. After Plaintiff's counsel did so, Defendants filed a brief opposing their request for fees. Defendants argued that Plaintiff's counsel should not receive recompense for time spent briefing issues which the Court did not expressly base its order granting sanctions on. Supreme Court precedent makes that argument untenable. *See Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983); April 12, 2017, Op. & Order at 6–7. Defendants also argued that, because the contingency fee agreement had not been disclosed, sanctions should not be imposed. The Court

rejected Defendants' argument, finding that Plaintiff's counsel did not need to strictly comply with Michigan procedures for collecting on an attorney lien, but directed Plaintiff's counsel to submit the fee agreement for a separate reason: to ensure that the amount of sanctions imposed would not produce a windfall for Plaintiff's counsel. When that fee agreement was filed, Defendants filed yet another unsolicited brief arguing that the agreement could not be enforced. As explained above, the fee agreement clearly complies with Plaintiff's counsel's ethical obligations. Given the plain text of the Michigan Rules of Professional Conduct and the clarifying formal opinions by the Michigan State Bar, Defendants' arguments to the contrary were frivolous.

Considered in context, Defendants' counsel has exceeded the bounds of zealous advocacy. Rather, Defendants' conduct constituted a transparent effort to circumvent the plain language of the Court's April 27, 2016, opinion and order. Even after being sanctioned for their disregard of the Court's order, Defendants' briefing and arguments seem more designed to "cause unnecessary delay" and "needlessly increase the cost of litigation" rather than to advance nonfrivolous legal arguments. Fed. R. Civ. Pro. 11(b)(1).[1] As the Court explained in the April 27, 2016, opinion and order, allowing offset of attorney fees in the FDCPA context would discourage competent attorneys from accepting those cases. That disincentive exists both when attorneys are compelled to satisfy their client's debts and when attorneys must engage in contentious, protracted litigation to obtain their fees. Were defendants in FDCPA cases permitted to delay payment of attorney fees awards by a year and a half, as occurred in this case, without consequence, "future FDCPA actions" would be chilled. April 27, 2016, Op. & Order at 7.

---

[1] Although Defendants' briefing has likely violated Rule 11, Defendants have not been specifically directed to show cause why Rule 11 has not been violated. *See* Rule 11(c)(3). For that reason, the sanctions will be premised on the Court's inherent, equitable power to impose sanctions, described above. Given the lengthy litigation in this case regarding whether sanctions pursuant to that power are appropriate, no further notice is necessary.

The Court's previous orders which found that Plaintiff's counsel was entitled to compensatory sanctions for the time spent collecting the attorney fees award have proved insufficient to deter Defendants' bad faith behavior. Punitive sanctions are thus necessary.[2] Because the bad faith behavior is equally traceable to Defendants and Defendants' counsel, they will be jointly and severally responsible for paying Plaintiff's counsel an additional $3,000 in punitive sanctions.

### III

Accordingly, it is **ORDERED** that Defendants are **DIRECTED** to pay **$20,376.63** directly to Plaintiff's counsel **on or before July 28, 2017.**

It is further **ORDERED** that Defendants and Defendants' counsel are **DIRECTED** to jointly and severally pay **$3,000** directly to Plaintiff's counsel **on or before July 28, 2017.**

Dated: July 19, 2017                         s/Thomas L. Ludington
                                             THOMAS L. LUDINGTON
                                             United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 19, 2017.

s/Kelly Winslow
KELLY WINSLOW, Case Manager

---

[2] Further, additional sanctions are necessary because Plaintiff's counsel was forced to file another brief defending its fee agreement. Plaintiff's counsel would be entitled to compensation for the time spent preparing that brief. Rather than directing Plaintiff's counsel to disclose the amount of time spent (and thus likely triggering another round of frivolous challenges by Defendant), punitive sanctions will be imposed.